Our next case is Sino Legend v. ITC I want to make sure I have the order of arguments correct. Mr. Pincus, you're going to reserve four minutes for rebuttal, is that correct? Yes, Your Honor. Mr. Rosenwig, you're going to argue for eight minutes, followed by Mr. Cash for seven, is that correct? Yes, Your Honor. Okay. Okay, Mr. Pincus, you may proceed. Thank you, Your Honor, and may it please the Court. This case involves an ITC proceeding involving tactifiers used in producing products made of layers of rubber, such as tires. It's based on a misappropriation in China of interveners' trade secrets and the use of those trade secrets to manufacture the product in China. I'd like to begin, if I may, with the extraterritoriality issue. Are you asking us to overrule Tian Rui, or is your argument that this case is distinguishable from Tian Rui? Our argument is that Tian Rui has been undermined significantly so that it could be reconsidered by a panel based on the Supreme Court's intervening decision in Kiabel. And that Kiabel basically, in three ways, undermines the reasoning of the majority in Tian Rui such that it would be open to the panel to reconsider it. Obviously, it's also a question— Let's start there. What is it about the case that undermined Tian Rui? Sure, three things, Your Honor. First of all, in Tian Rui, the court relied on statutory language touching on international matters, the use of the word importation. And in Kiabel, the Supreme Court had a similar statute. It referred to the law of nations and claims brought by aliens and said that that was not sufficient to render the presumption against extraterritoriality inapplicable. So we think that that basis of Tian Rui, which is the saying because the word importation is here, that's enough, is significantly undermined by Kiabel in a similar context reaching the opposite conclusion. I'm sorry. What was the statutory term in Kiabel? In your view, is that close cousin of the term importation? Two things, claims based on the law of nations and claims based on—and claims brought by aliens. And the argument in that case by the plaintiffs who ultimately lost was that language referred sufficiently to international matters that that was enough to bring the case out of the presumption against extraterritoriality. Right. Importation is international in nature inherently, but at the same time, it's a domestic act as well. And that's what seemed to be missing in the Kiabel case. Anything that's remotely domestic going on there? No, I think it was the opposite, Your Honor, because Kiabel held that the language wasn't international. Even though it referred to law of nations and aliens, the court said that was not— Oh, I'm sorry. I'm— And that was being regulated or policed. It all occurred in Nigeria, right? It did, but this question, of course, is about whether the language of the statute gave the clear indication that the presumption against extraterritoriality didn't apply. And so the language of the statute, I think, is critical. And that sort of leads to the second difference between Thien-Rui and Kiabel. Thien-Rui said in footnote two there's no clear statement rule citing the Supreme Court's decision in Morrison. But in Kiabel, the court specifically said that there has to be a clear indication. It doesn't have to be a clear statement in the statute, but it has to be a clear indication. And Thien-Rui pretty clearly doesn't apply that clear indication standard. So you're saying there's some kind of daylight on the statutory canon of presumption against extraterritoriality between Kiabel and Morrison? I think to the extent that there is language in Morrison at the end of Morrison that says there doesn't have to be a clear statement that in terms this is extraterritorial. And I think my friend in their brief and the court in Thien-Rui took that to mean that there didn't have to be a clear indication that Congress meant the statute to apply extraterritorially. And I think to the extent that was true, I think Kiabel makes clear that that's not right and that in fact there has to be a clear indication. And nowhere in Thien-Rui is the clear indication standard applied. Why wouldn't the Supreme Court just refer to Thien-Rui and rejected it? Excuse me? Why didn't the Supreme Court just refer to the Thien-Rui decision and just reject it? Well, unfortunately it would be clearer for us all, but of course the question of Section 337 wasn't before the court. So we have to sort of go based on the tea leaves that we have. And the third difference is— Then why should we presume then that Kiabel reaches Thien-Rui? I don't think you should presume it, Your Honor. I think that what you should do is look at the rationale that Thien-Rui applied and compare it to what the court did in— to the argument as to whether Thien-Rui was correct or not. Well, I think there are two questions, Your Honor. I think the threshold question is does Kiabel cast doubt on Thien-Rui's rationale such that it would be open to a panel as opposed to the en banc court to reconsider it? I think the second question then is applying— But as you said, we shouldn't presume that it did. I mean, so what is there—without that presumption, you're left with an argument. It seems to me that most of the briefing and most of the argument is based on Thien-Rui, that it was wrong. It was wrongly decided. Well, I think the—I think what we tried to show in our brief are two things. First of all, that Kiabel makes clear that the basis on which Thien-Rui was decided, the three bases, are inconsistent with Kiabel. And Kiabel precludes relying on them. If we're right about that, then the question is, okay, what's the right answer for extraterritoriality under 337? And that requires looking at Kiabel but also looking at other cases that the court has decided because it could be—we obviously don't agree with this— but it could be that even though the three reasons that were given in Thien-Rui are inconsistent with Kiabel, maybe there are other arguments that would be consistent with Kiabel. So I think the panel would have to look at it or the court, the en banc court, at those two steps. So if we determine that Kiabel doesn't have the effect that you argue, then the case is over for you? That issue. We have a second issue on comedy. But yes, I think for the panel, at least, that would be over and obviously would be open for the panel to say that this should be taken en banc. But I think, yes, that's exactly right. So just to cover the third difference, in Kiabel the court applied the focus test. That test was mentioned in Morrison. It was not mentioned at all in Thien-Rui. That test is if the court finds that a statute is not extraterritorial, then it has to identify what the focus of the statute is because that conduct that's the focus of the statute has to occur in the United States. Thien-Rui didn't apply that test. Perhaps because the majority there thought that Morrison was limited to securities law. Kiabel makes clear that that Morrison test applies generally. And so that's another basis of Thien-Rui that is inconsistent with Kiabel. Didn't Thien-Rui say there's a domestic injury and the remedy would be domestic and the triggering act is importation, which also is bringing these articles onto the US shores? I think there's a way to read – Thien-Rui is fairly clearly saying the focus of everything is domestic. Well, it is, although as the dissent pointed out, the statute doesn't just refer to importation. It refers to an unfair method or act in the importation. And so I think that actually is quite different. And I think as the dissent argued and as we discussed in our briefs, saying that any unfair act anywhere in the world, as long as it relates in some way to the imported goods as covered, is quite a broad extraterritorial application in the absence of what Congress says. But maybe I should move on to the comedy argument because the second issue that we raised is that the ITC should have deferred to the Chinese court decision in a case instituted by the intervener. And there the ITC held comedy principles inapplicable. It said it has an investigation and comedy has no role to play. And so here that ruling could only be upheld if the court were to conclude that comedy principles are wholly inapplicable in an ITC ruling, and we think there's no basis for that. And indeed, my friends don't really defend that argument. They say comedy was inappropriate here for various reasons relating to the nature of the issues before the court in China and the Chinese litigation system generally. But the ITC did not base its decision on that ground. So if that's the only way that the decision below could be defended under Chenery and other cases, there'd have to be a remand to allow the ITC to exercise its authority to apply the appropriate comedy test and decide whether comedy is appropriate. So there's no obligation to observe comedy, right? It's a discretionary act on behalf of the agency in this case. Well, I think there's an obligation that comedy principles apply. In any particular case, there's no mandate that the foreign decision be deferred to. the agency has to apply the test that generally applicably tests for comedy, which requires, first of all, for someone to come forward with the decision, and then for the party opposing comedy to say, well, this was an unfair tribunal, or there are various other reasons that are set forth in the Restatement of Foreign Judgments, Section 481, and in some of the cases that we cite that would then be assessed and the decision would be made. Do you know of a case where a federal court has granted comedy in this way, essentially giving preclusive effect to a decision by a Chinese court? We cite a number of cases involving recognition of judgments in which, obviously, the first step in recognizing a judgment is to recognize it and then enforce it. And so we cite a number of cases in which that's been done. A federal court has enforced a Chinese court's judgment? Yes, Your Honor. And, in fact, in one of the cases that SI cites, a district court case, although the decision ultimately went against transferring the case to China on foreign nonconvenience grounds, the district court found, as we discussed in our reply brief, that the Chinese court was an appropriate forum. And it would be, I think, very surprising to have a blanket rule that any country's courts are totally off base without some examination of the fairness and of the proceedings there. And we cite a law review article in our reply brief that talks about the fairness of the Chinese tribunals. So we think the appropriate result here is to say, no, comedy principles apply in ITC proceedings, and to remand to allow the ITC to apply those principles in this case. Even the enforcement of a foreign judgment requires some sort of a due process analysis. Absolutely, Your Honor. And so too with comedy. And that was a dispute here. And the issue is whether the Chinese proceedings have been unfair in its consideration of the misappropriation conduct. True, Your Honor. And that's a factual finding, correct? Well, I think the fairness is what courts have said is the question whether to recognize a judgment. We cite a Second Circuit case on this. It's reviewed de novo. There may be underlying factual findings that may get deference. But here the ITC didn't address that issue at all. It just, in the footnote at the beginning of the case and in the passage at the end, basically just said comedy doesn't apply. It didn't base its decision on some determination that Chinese proceedings are unfair or, per se, unwarranted of comedy. And we think that's why a remand is necessary. If I could reserve the balance of my time. Okay. Thank you. Mr. Rosenweg. Yes. May it please the Court. If I can, I'd like to just start for a couple minutes with extraterritoriality. This Court in Tianri applied the Morrison Test, and twice on page 1329 of Tianri, the Court found the focus of Section 337 is on an inherently international transaction importation. Later on that same page, in light of the statute's focus on the act of importation and the resulting domestic industry, the Commission's order does not purport to regulate purely foreign conduct. And then immediately after that is a citation to Morrison. So it's kind of extraordinary to hear an explanation that the Court shouldn't apply Tianri because the Court in Tianri didn't apply Morrison. That's just not true. With respect to focus, because of these holdings in Tianri, we hear from my colleague on the other side here that the focus of the statute isn't importation. It's something else that comes up throughout its briefs, including pages 11 to 12 of its reply. That issue has been decided by Tianri. Now, of course, the other thing that we hear from the appellants is that Kiobel changes everything. Now, if it really was so obvious that it changes anything, you would have expected Sino-Legend to bring it to the attention of the Commission. It never did so, even in its submissions to the Commission after Kiobel issued. Putting that to the side, the facts of Kiobel and the statute there are very different from what's going on here. In Kiobel, the Supreme Court could not ascertain the focus of the Alien Tort Statute from its face or from its legislative history because that statute is purely jurisdictional. As the Court said at page 1664, it does not regulate conduct or afford relief. These difficulties in interpreting the Alien Tort Statute are set out in Mustafa, a Second Circuit case at footnote 9. It's set out in Doe v. Nestle, a Ninth Circuit case, 766 F. 3rd at 1028. That's all very different from the present case. As of yesterday or the day before, if you search on Westlaw for Kiobel and in the same paragraph as Touch and Concern, there are only 14 cases of the Courts of Appeals. None of those cases interpret Kiobel in the way that Sino-Legend does here, in a way that would essentially abrogate Morrison. Now, tellingly, this Court in Tianri even presaged what Kiobel said. And what Kiobel said was, well, we can't apply the focus test, so what we're going to do is look to the principles underlying the canon. And for purposes of the Alien Tort Statute, we'll maybe look at a broader array of history. But footnote 2 of Tianri explains that even when the presumption against extraterritoriality applies, the Supreme Court has not treated the presumption as a clear statement rule, but has noted that conduct can be consulted as well. And that's exactly what happened in Kiobel. The Court found that the presumption applied, but then left open at the end that for cases that touch and concern the United States with substantial force, that you would be able to override that presumption. None of that applies here because the Court in Tianri found that the presumption against extraterritoriality does not apply. It does not apply because the statute requires importation. It does not apply because in every case the statute requires economic injury here. It's just completely inapposite. With respect to comedy, SinoLegend invokes and tries to blend together a number of different legal theories to create a brand new amalgam for comedy here. We've got res judicata. We've got forum nonconvenience. We've got enforcement of foreign judgments for money damages. We've got bankruptcy cases with special rules discussed in Royal and Son in the Second Circuit case with respect to bankruptcy. None of that applies here. Taking forum nonconvenience, for example, there was no motion to dismiss or to state proceedings upon the institution of the investigation. And instead, SinoLegend waited nearly a year, waited for the hearing here, to try to raise these issues. That's too late. On page 60 of SinoLegend's opening brief, there's a whole list of forum nonconvenience cases. And I think counsel on the other side alluded to one of these district court cases in his opening. But on page 60, so this is the long string site, if you read these cases, King v. Waves, forum nonconvenience motion denied. Jacobs v. Yang, forum nonconvenience motion denied. Nowco, forum nonconvenience motion denied, which is hard to square with the representation to the court that scores of lower courts have actually dismissed matters pursuant to forum nonconvenience. Was there any argument made at the ITC that the Chinese proceedings were unfair? The argument was not made in the commission. I'd like to step back and just talk about the chronology of what happened here, because the evidence that my colleague on the other side now relies upon is a law review article, as opposed to anything in these proceedings. Somewhat counterintuitively, when the issue of the Chinese proceedings came to the judge, it was actually SI that wanted to rely upon some of the technical determinations that occurred in that proceeding. And what was going on in China was pertinent for Sino legend with respect to the defense of unclean hands, and only unclean hands. Sino legend never sought to put in evidence about comedy with respect to the Chinese judgment, to the extent that it actually did. And I can't find it in the record. It certainly never preserved those arguments. So what we're left with by the time the commission received the case is a situation in which there was no evidence of comedy in the record. If you look at these forum nonconvenience cases, what you'll see consistently is you'll see affidavit practice, which has been endorsed by the Supreme Court for decades now. You'll have law professors coming in, not law reviews, but law professors with affidavits. They can be cross-examined as to the fairness and unfairness of the system. And facts with respect to the underlying proceeding. None of that was at issue here. And instead, what Sino legend is trying to do is to argue that in some cases, namely three out of these eight, in which cases were actually dismissed pursuant to the doctrine of forum nonconvenience. Because sometimes a case might be dismissed in favor of proceedings in China. This case should be dismissed, too. But reading those cases demonstrates the difference in the evidence that was put in. Can you get to the commission's position on comedy? The commission's position on comedy is that comedy is an affirmative defense. We know that. Look at the answers here. There are 14 affirmative defenses. Comedy isn't one of them. So in the context in which this was presented to the commission a year into proceedings, comedy had no place here. There was no evidence of comedy. There was nothing. To the extent that in a future case, a party promptly raises these issues, I think under those facts, maybe there's some room in a future case to make similar such arguments. It might go more toward staying a case rather than dismissal. But even in SinoLegend's pre-hearing brief, its arguments at that point, until the decision came out, looked a little bit more like forum nonconvenience, because they were arguing that the case should be stayed or dismissed. So the commission's position is not that it flatly rejects any notions of comedy with respect to a forum nonconvenience context or a case of preclusion context? I would say that there might be a little bit of wiggle room with respect to a party that actually makes substantial arguments and does so in a timely manner. With the benefit of hindsight, given the little that SinoLegend prepared in this case, I think it was appropriate for the commission to explain comedy in the way that it did. Does the standard review change based on the type of comedy we're talking about, i.e., forum nonconvenience versus something more like preclusion? We've been talking about the Second Circuit. The Second Circuit case is a lot different. That was a case that involved the two signatory nations to a treaty regarding abducted children. It was a case in which the Greek Supreme Court, in this high-profile case, had actually raised the issue. The Ninth Circuit and the D.C. Circuit have had the opportunity to adopt the Second Circuit's de novo review and have demurred from doing so, finding that it didn't affect the result. I'm not aware of any other circuits that have followed the Second Circuit. Can I just add one last sentence? Sure. Thank you, Your Honor. The Chinese court here at pages 4553 to 4554 had the opportunity to take account of the commission's decision, at least the ALJ's decision here. It was put aside as being foreign evidence. Respectfully, we request that this court put aside the Chinese determination in the same way that the Chinese put aside the U.S. determination. Thank you. Okay, thank you. Mr. Cash? Good morning. May it please the Court. I'd like to start with the comedy issue since that was the last issue being addressed. Counsel said that the SI group doesn't defend the commission's position that comedy never applies in Section 337 cases and points to footnote 1, page 105. That's not our position, and we don't think that that was the commission's opinion, so we didn't have to defend it. We didn't interpret the commission's footnote as precluding comedy in all issues in all 337 cases. You're talking about the footnote on A106, right? I think it's A105, but if it's A106, then you're correct, sir. It's footnote 1. So there are multiple elements of a 337 case, as the court knows, and comedy may or may not apply to any or all of them in a particular case, and that's my understanding of the footnote where the commission says that it has to satisfy itself of whether there's a 337 violation. In this case, the commission didn't rule out the possibility even of comedy in a particular case, in a future case maybe, where it's raised properly on discrete issues like misappropriation or even trade secret protectability, for example, but in this case, Sign a Legend didn't raise comedy on those issues in their briefs on commission review. Sign a Legend actually did raise the issue of comedy in their briefs on commission review on one issue and one issue only. Yeah, footnote 101 says that they raised it in their petition. What petition does that refer to? So there's a petition, and then there's a briefing on review. First, there's a petition, and that basically says we'd like to have review, and they raised comedy generally there, but then the commission said, we'll grant review on all issues briefly, and then on review, in the briefing, they basically waived it. They didn't address it. All they did was they addressed comedy in one issue and one issue only, and that was on the issue of public interest. They didn't address it on the merits of the misappropriation claim, and they didn't talk about the issues and how they would have been argued in both cases, et cetera. They didn't address it on protectability or anything else. What they did was they said that it bears on the issue of the public interest, and in the commission's opinion, the commission actually did address that issue. It addressed it to the extent that Sign a Legend brought it up at page A106. It talked about what are the public interest factors, environmental, public health, things like that, and then it said they raised the issue of the Chinese foreign judgment, and it said that it has no bearing on, this is a quote from page A186. I may have the page number off by one if you're honest and correct on that. I have it as A186. The Chinese judgment has no bearing on the public interest factors, which the commission is required by statute to consider in connection with the issuance of a remedy. So it was considering all the environmental, public health, the things that it's required to consider in connection with 337 as it applies to public interest factors. So it did not preclude comedy applying. It just said in this case it doesn't govern the issue of public interest. So this is a fair ruling. At that point, was there any discussion or argument as to due process in China? There wasn't detailed discussion on due process, but there was in our brief quite a bit of discussion on effectively what that was in terms of the denial of the opportunities to present evidence, the denial of the opportunity to address, for example— Is this where the USTRS reports were also submitted as to— In connection with due process specifically? The USTR reports were submitted specifically in connection with comedy, but they were not specifically referring to due process. Is that Section 301 report? Yes, the Section 301 report. And on that point, Your Honor, I'd just like to mention that that was in evidence and it's an authoritative report by the US government. This article that they mentioned for the first time on appeal, this Benjamin Vi article, it's written by a lawyer who's trying to drum up business for a Chinese litigation. He's a Chinese lawyer. The article basically says there's numerous cases in which US companies have been successful in China. Actually, if you look at the article, there's only one case, the GE case, that has ever been noted as being successful as a private civil litigation in China for trade secret misappropriation. It's really just a marketing fluff piece, and again, it's not evidence in this case. Is comedy the only issue you're addressing? No, actually, I'd also like an opportunity to talk about extraterritoriality. You'd better move on. Okay, that sounds fine. The statute in this case, 337, is a statute that's intended to, and very clearly does, capture a combination of foreign and domestic conduct. Even the elements both include foreign and domestic elements. The facts of this case also are a combination of foreign and domestic conduct. There was egregious misconduct here and misappropriation both here and abroad satisfying the elements of 337. The sign of legends briefs to the commission did not address the comedy elements such as, I'm sorry, the elements such as where the elements of 337 occurred. For example, where the misappropriation occurred. They do that for the first time here on appeal, and that's not really the appropriate place for that to be raised for the first time. In their briefs to the commission, they did not address extraterritoriality at all. It was first raised in the petition, and then they dropped it from their briefs. Now their latest submission, the November 30th submission, in that submission they say, quote, the alleged unfair acts of competition and unfair acts must occur in the United States or in connection with importation. That's their November 30th submission, in connection with the acts of importation. That parallels the Supreme Court's description of the Securities Exchange Act in Morrison, which says, in Morrison they said, Section 10B does not punish deceptive conduct, but only deceptive conduct in connection with the purchase or sale of any security registered on a national securities exchange. So neither statute, it's a very analogous situation, but neither statute punishes or addresses bad acts per se. The focus is on the domestic transaction in each case. So in Morrison, the sale of the exchange, of the securities, was foreign. The exchange was in Australia, and so the presumption applied. But here, the importation is domestic, so the presumption doesn't apply. So we have a flipped situation. And Morrison applies, I think, very directly to this case, and you would find that it controls and that the result is that the focus is on importation and the presumption does not apply in this case. We got it. Thank you. Thank you very much, Your Honor. Mr. Pincus, you have four minutes on the vote. Thanks very much, Your Honor. A couple of points. First of all, on this question of waiver and what was raised and what the Commission decided, I think it's important to be very clear. SinoLegend raised comedy generally as a basis for the rejection of the misappropriation claim by the ITC in its petition, and that's at A7504 and A7505. Footnote 1, what Your Honor referred to, responds to that. It says it was raised in the petition. Here's our response. Essentially, comedy doesn't apply. We have to make our own determination. The briefs that my colleague is referring to are the written submissions after. At that point, why didn't you submit additional arguments as to the Chinese proceedings, the character of the Chinese proceedings, its fairness, its due process, notice to parties, all of the hallmarks that courts look to when seeking, for example, to enforce a foreign judgment? Well, Your Honor, this is sort of a unique case because the other side brought this case in the Chinese courts to begin with. This is not the typical case where people were hauled into a foreign court and are complaining that it was unfair. SI pursued the case, as we detail in our brief, multiple times in the Chinese courts. We think submitting the judgments of the decisions, which laid out exactly the process that was followed, met our prima facie burden. If I can, I want to address my colleague's second waiver argument, which is that the post-grant brief only addressed the use of the Chinese decision in connection with the public interest factors. That's because at A15084, what the commission said when it issued an order was the parties are requested to file written submissions on the issues identified in this order and on the issues of remedy. So the commission did not request further briefing on the general question of comedy and arguing that somehow there was waiver because it wasn't raised is directly contrary to the language of the commission's opinion. I think it's clear, contrary to what my colleague from the ITC said, that there is a comedy principle that it's applied in the federal courts. And here the commission, in footnote one, rejected it. And the question is whether that comedy principle applies. If it does, then the case should be remanded so the commission can make the determination that your honor is referring to. And the commission, obviously, would have to consider the fairness of the Chinese proceedings, the claims about identity of the parties, and things like that. We think, as we explain in detail in our reply brief, it's clear that they should be rejected. But that would certainly be open on remand. But the court can't uphold the commission's decision rejecting comedy across the board as a principle inapplicable to the ITC based on the different finding that the ITC didn't make, that for some reason comedy might be inappropriate in these circumstances. If that's the question, then it has to be decided here. And that's why, contrary to what my colleagues say, we're not arguing that they're precluded from raising that argument or that this court should say that the ITC judgment has to be reversed and the case dismissed based on the Chinese court's decision. All we're saying is that those issues need to be addressed by the ITC. It can't simply say across the board comedy has no place in our proceedings. Thank you very much. Thank you. We thank the party for their arguments.